Our last case for argument today is 24-1158, Habas Sinai v. Tibbi Gazlar Your Honor, we have three counsel who would like to submit a response table. Maybe we can use one of... Ms. Noonan has consented to let us use one of her chairs. Sure. Ms. Noonan, please proceed. Good morning. For the record, Nancy Noonan on behalf of Habas, plaintiff appellant. This case is about how commerce compared Habas' U.S. sales price to Habas' home market sales prices. So, counsel, unless I'm mistaken, this whole case is about should it have been using U.S. dollars or lira. Is that correct? That's correct, Your Honor. And I have no doubt that there is a customary practice in commerce to use U.S. dollars. Does that also sound correct? That is correct, when the transactions are in U.S. currency. The problem here is if I understand the facts right, and you're going to correct me if I don't, the problem here is commerce didn't feel that it could do that because your sales weren't key to specific dates during which it could ascertain the exchange rate. Exchange rate for foreign currency flourishes quite a bit up and down in a given month even. And my understanding is unlike other cases where they could key in the exact dates of sales and then they could say, okay, what was the exchange rate on that day? Then they convert it and then they can do the whole thing in U.S. dollars. But my understanding is they said here the problem is you didn't provide or enough information wasn't provided as to the specific sales dates. So they couldn't do that monetary conversion to change lira into U.S. dollars, so they had to do it in lira. Is that what I understand this case to be about? I believe that's their argument, Your Honor, but I disagree that that's what the record shows. What we show on the record is that at the time of invoicing in Turkey, and that is a price that has been negotiated in U.S. dollars and it's customary in Turkey to do these transactions in U.S. dollars, which is all over this record and not disputed. I don't think Commerce disputes that. I don't think Commerce disputes that customarily they would do this in U.S. dollars. I think their argument is in this case the information sufficient to achieve that was not present. As an accounting matter in Turkey, the U.S. dollar price must be invoiced in the home market in Turkish lira. And so when it goes into the financial statement and the books and records of the Turkish respondent, it is in Turkish lira. So it doesn't matter what Commerce thinks the exchange rate should have been. What Commerce does agree is that the amount that was recorded for this particular invoice in Turkish lira, where on the invoice it has the U.S. dollar unit value, that amount in Turkish lira went into our financial statements, tied into our sales revenue, and Commerce was completely satisfied that we had reported all of our sales. There's just that extra step of getting that Turkish lira price that was on the invoice to the U.S. dollar price. And there's no requirement under Turkish GAAP to be – in fact, they're not even allowed. You can see in our financial statement on Appendix 001386, it says the company is established in Turkey. It maintains its books and accounts and prepares a statutory financial statement in Turkish lira in accordance with Turkish commercial code, tax legislation, and the uniform chart of accounts issued by the Ministry of Finance. So there's only one sale in the U.S. That sale is on August 2nd, 2018. Commerce, in its normal practice to do its fair comparison, looks at the home market sales for the month of August 2018. We have on the record just the unbelievably unusual exchange rate fluctuations that occurred. And simply by having the conversion from the U.S. dollar price, which was negotiated with Habash's customer, translated into Turkish lira on the invoice in Turkey, and then converted back to U.S. dollars at the U.S. August 2nd, 2018 date of sale, that is the only reason why this company has a margin. But Commerce made a fact-finding, and, you know, I've got to give a lot of deference in these scenarios. Commerce made a fact-finding that the U.S. dollar price could not be reconciled because Habash didn't know the payment date of each invoice, and thus not the exchange rate that would be in effect on that date. What do I do with that? I mean, that doesn't feel like something I can really question. Well, Your Honor, I believe we can because we explained in our Section B questionnaire response that Habash does not, in its normal course of business, they have an open account system. So the customer is paying kind of on a rolling basis. It's not tied in their system to direct invoices. And that is why we provided the aged accounts receivable date of payment in the record, and Commerce never asked anything about that. They never said, tell us more about why you can't do that, or tell us more about this particular transaction. And Commerce does have an obligation, if they believe there's a deficiency on the record, to give the respondent a chance to provide more information. They did not do that for this particular transaction. Well, when you say, if they think there's a deficiency in the record, they have to give you an obligation, I don't know that this falls into that category. This isn't a deficiency in the record. This is just a question of, well, let's look at this record. Can I use U.S. dollars or can I use Lira? And ultimately, they're like, well, we can use Lira. We can't really use U.S. dollars because we don't have specific states linked to these payments. And the exchange rate was fluctuating wildly, so we can't do that. But what Commerce did have on the record and that this tied into the accounting system is at the date of invoice, there's only one example of a home market sale, which is kind of in the normal course unless Commerce asks or comes and verifies. There's only one example of a home market sale, and we see on that invoice on the record the U.S. dollar unit price, the exact exchange rate that was used, which could be validated, and how that translates into the Turkish currency. And then that Turkish currency amount goes into the financial statements and into the sales revenue. Sales revenue recognition is, of course, when the sale is made, not when payment is made. And then we also have on the record evidence that this customer makes payments in U.S. dollars. So it's unfortunate for our dumping purposes that in their normal course of business, they have an open account and the customer just has these rolling payments coming in. But to have such a distortive effect on a very, and the record does at least show, all of the unbelievable fluctuations in the exchange rate in the month of August 2018, that was when President Trump had imposed the extra 25% Section 232 tariffs on Turkey. So, you know, the market went wild. It's not a fair comparison. What is our standard of review for this issue? Substantial evidence and in accordance with law. So if there's substantial evidence for commerce to have chosen to use the lira rather than the U.S. dollar amount, that's it, right? That would be it. But I really do not believe there's substantial evidence, Your Honor. And the statute does require a fair comparison between the home market price and the U.S. price. Can you succinctly explain why you believe there is not substantial evidence? Because we show that the price was negotiated in U.S. dollars, and that is in the normal course of business in the home market in Turkey. These sales are done in U.S. dollars. That the prior administrative review in this exact hot rolled steel investigation prior segment, commerce accepted the use of U.S. dollars and even acknowledged that doing a currency conversion back and forth would be distortive. And so, yes, of course, we have to show it in a Turkish lira amount. That's what Turkish law requires under the general accounting principles. But we show that that amount is... You don't have to accept payments on the ruling basis you do, which is also part of the problem, right? That is a fact of how this company does business that I think has confused the record, Your Honor, yes. But that is how they do business, and that is acceptable. Well, sometimes we get cases where companies do business and keep their records in a way that requires commerce to do alternative methodologies to come up with all of the different figures they do in that. And you can't blame commerce for business choices your client makes. What I hear you saying is you disagree with the methodology. I don't hear you saying commerce's methodology was incorrect as a matter of law or that there's not evidence in the record for what commerce came up with. You talk about why your methodology was correct and supported by substantial evidence. What specifically about commerce's methodology lacks substantial evidence? Well, Your Honor, we would say that under the precedent, and I know it's not binding, but under what has typically happened with commerce in this hot-rolled case, commerce has used the U.S. dollar price, for example, quoting from... Well, I understand that, but commerce can change its mind if it has a reason to. And I think you gave a reason here. So what I'm trying to get at is let's just assume that we agree that it was okay for them to do all this conversion stuff. Is that basically the end of your argument, or do you say even if it was okay to do them, there's still not evidence to support their methodology and the number they came up with? I'm afraid I'd have to say if you think that they had evidence to do it, that I can't. I have nothing else to say about that. So there's evidence to support their methodology. Well, I mean, from the perspective that they're looking at that Turkish lira price on the invoice and saying game over. But, again, we're looking at the totality of the evidence on the record and taking into account... Not reweighing it. I'm not saying to reweigh it, but I'm just saying looking at the totality of the record, we believe the U.S. dollar price was the fair comparison to make under the statute. All right. Let's hear from Ms. Bond, please. May it please the court. The court, an independent basis to resolve this case is the reconciliation concern that was just being discussed. Only the Turkish lira values on the invoices could be reconciled with the accounting, with Habash's financial statements. And commerce can only rely on accurate information that can be reconciled. Commerce doesn't just take a collection of invoices or a collection of sales data and take that at face value. It has to ensure that at the end of the day to achieve an accurate dumping margin that the amounts actually reconciles the financial statements. So that's what commerce did here. That's a longstanding practice. There's been no claim that in doing the sales reconciliation or relying on reconciled data that commerce departed in any way from prior cases. Well, I mean, in most cases like this, it seems that the common practice is to find a way to do a conversion and use U.S. dollars. Isn't that fair? So that's point two. So that's leaving... So the reconciliate... Well, no, of course I'll answer the question. So the reconciliation is a sufficient basis to resolve it because that has not been a problem in the prior cases. In the prior cases, the dollar value, there was no concern that the dollar values did not reconcile. So that's separate and sufficient here. The second point to get to Your Honor's question is the prior cases don't say there's a custom of using dollar values. What happens is a factual question. So there are... The similarity, I suppose, between this case and the case that Ms. Noonan referenced, the 2016-2017 review of the same order. Like this case, that case involved invoices from the respondent that had a dollar unit value and a Turkish lira unit value, both on the invoice. And all that that shows, that presents the factual question of which of those two values on the invoice controls the agreement between the parties for what will actually be paid. Because, of course, this is in Turkey at the time during both periods. There was a period of high inflation. Changes in the currency between the... So there could be changes in the currency between the date of the invoice and the date of the payment. So in that context, Commerce asked the question, which of those two prices is the actual final price? And in this case, at pages 42 to 43 of the appendix, Commerce answered, the Turkish lira price is the final price that's agreed between the parties. And if that wasn't true, the Turkish lira values wouldn't have reconciled with the payments that were ultimately received. So what's different ultimately is a different financial practice between the respondent in this case and the respondent in the prior case. Because in the prior case, it was the dollars. The dollar value on the invoice controlled the amount actually paid, whereas in this case, as shown by the sample sale, the dollar values had no connection with the price ultimately paid. And this is a dumb question, but why did the government at that point... If what you actually paid was the Turkish lira number and you know the date upon which that payment occurred, why don't you just do the exchange rate as of that date and figure out how that converts into U.S. dollars? Well, a few responses. Ms. Noonan is correct, and I think the record is clear, that Habash could not identify the date of payment linked to the correct invoice. So the total amount of payments in lira matched the total amount charged on the invoices. You just don't know upon which dates those payments were made, and that's why you can't do the exchange rate thing. Right. You can't connect the date of the payment with the date of the invoice, I think is the concern here. So therefore, you can't connect the invoice date with the payment. And because of the fluctuations in the inflation, there could be a big difference between the value or the lira on the invoice date and on the payment date. Right. And that's why perhaps some other companies, like the respondent in the prior review, their customers had to pay on the payment date the U.S. dollar amount. That was often different than the lira amount on the invoice. So the lira amounts didn't match there. The dollar values matched the ultimate price paid. In this case, we just have different facts. The facts are, in this case, that the lira prices on the invoice date match the payments that were ultimately received. Did Commerce have any obligation to go back to an appellant in Havasini circumstances and say, this record doesn't allow us to match up these dates? Can you provide additional information that would sort of fill that gap? So no. First answer is no, and the second answer is Commerce did it anyway. No, Commerce didn't have an obligation. The information reconciles. Commerce didn't rely on facts available. There was no need to resort to that. The question is, which information is accurate that was provided? So Havas provided accurate information. It was the lira values in its statements. That's what reconciled. That's what Commerce used. Commerce did ask a follow-up question in a questionnaire. I think it's at appendix page 3108. And Commerce asked for additional payment. There's some confidential data there. But Commerce asked for additional payment documentation for certain home market invoices. And then Havas responded by saying, by providing some corrections but acknowledging also, I think at appendix page 1628, they don't have the payment-specific dates or exchange rates. So Commerce did follow up, and we also addressed this in our response brief, I believe, at page 23, note 6. So basically Commerce did follow up and ask some follow-up questions. Havas wasn't able to provide the information. But in a case like this one where Commerce isn't applying facts available, they're not making any inferences, they're relying on the information, the books and records that Havas submitted. And the interested parties have the burden to develop the record before Commerce. Commerce issues the questionnaires. Interested parties provide responses. Commerce acts based on the facts that are provided in the record. So to sum up, Counsel, it sounds like the approach used by Commerce was very much dependent on the record-keeping and the business practices of the party. That's right. And it's an intensely factual question. So the two independent bases here are only one set of data was reliable and accurate. And as Havas stated in its opening brief, Commerce does have an obligation to compute dumping margins as accurately as possible. The only information they could use that was accurate and reliable were the Zorkish lira values. And separately, Commerce explicitly found at pages 42 to 43, the lira price was the final price between the parties. That's a factual assessment about the agreement here. This record stands alone. So we would ask the Court to affirm. Thank you, Ms. Farr. Mr. Steinerman, do you have anything different to add? I don't want to really have a repeat of the same information. May it please the Court, Dan Steinerman. Your Honor, I think I can be brief. We certainly agree with the government that Havas's failure to reconcile on a U.S. dollar basis is dispositive. But I do want to push back a little bit, Your Honor, on this assertion that Commerce has a preference for using dollar values. We're talking about home market transactions where typically are stated in the local currency. When a respondent keeps its records in both U.S. dollars and the local currency, and where both currencies appear on the invoice, as in this case, Commerce's established practice is to use the currency, what they call the controlling currency. And what I mean by that, it's not so much the currency that appears on the invoice because both appear on the invoice. It's not even the currency in which payment is made. It's the currency that controls the amount that's going to be owed at the time of payment. And what evidence do you have of this? Well, that actually occurred in the 2019 Hot Rolls case that Ms. Newman was referring to. Yes, but you just suggested that there is a typical practice by Commerce. Now, you're not Commerce. You're the private sector person. So Commerce is not standing here telling me it's their typical practice and her time is done. So if you're going to tell me there's a standard practice in place, I would expect you to cite me to evidence that demonstrates this standard practice. Because I'm not just going to believe you. Well, then I would just say, Your Honor, to the Hot Roll from Turkey, the previous review, the 2016 to 2017 review, June 21st, 2019, where Commerce said that they're using the U.S. dollar price for the respondent. In that case, it was Kalagaklu because the U.S. dollar price controls the ultimate TL amount paid by the home market customers. In other words, the customers were actually paying in Turkish Lira, but it was a Turkish Lira equivalent of a dollar amount paid. And look, in this case, the numbers are confidential, so I won't get into them. But if I could perhaps illustrate with sort of a simple example. Does any of this matter to the actual determination in this case of whether substantial evidence supports Commerce's determination? Your Honor, at the end of the day, because the numbers didn't reconcile, I don't think it matters. But I think it's helpful because I think that if I hear Habas's argument, they're saying – because you represent clients in this area, but we're not deciding future cases. We're deciding this case. Okay. If I could, Your Honor, I think it would be helpful just to sort of illustrate this point about what it means to be the controlling currency. So if I get in – Do you think it would be helpful? I don't think we need that. Thank you, counsel. Thank you, Your Honor. Ms. Snowden. Just a few brief points in rebuttal. First, on the reconciliation to the audited financial statement issue, which is why the home market sales were found to be reported completely, the U.S. sales are also translated into Turkish Lira. That is everything in the audited financial statement for the sales revenue must be reported in Turkish Lira for a Turkish company. So the fact that it's not some sort of big surprise that the home market sales are converted from U.S. dollars to Turkish Lira, but everyone's ignoring the fact that the U.S. sales are also reported in Turkish Lira. Second, we still strongly want to make the point that the Turkish Lira price that's in our books and records is the converted U.S. dollar price as of the date of sale in the home market on the invoice. It's not some future payment date of when the payment came in. So that is the amount that the customer must pay to settle up their account at the date of sale. And our whole point is an August 2nd, 2018 U.S. sale in U.S. dollars being compared to- But their point was that they can't confirm that because of the fluctuations in currency between the date of sale and the actual date of payment. If it was made in Lira, it may mean that it was actually less than the sale price. That might be their argument, Your Honor, but our point is why do we have to convert- Did you prove that the date of sale price, which you say is the actual price paid- Wait, are you saying the date of sale price was actually paid even though it's paid sometime later, the actual specific amount? I feel like that that's what they're saying that they can't confirm, and that's why they needed to do their methodology here. We're saying that we agree that the Turkish Lira equivalent of the U.S. dollar amount that was negotiated with the customer is set at the date of invoicing, and that's the amount that goes into our books and records in terms of when the payment- But it was paid later. So could that effectively mean that even though that was the sales price recorded, the actual price paid was less? The actual pricing is paid in U.S. dollars, so then when you record it, when you reconvert it- But this is our whole point, Your Honor. It's too much conversions when you have a U.S. dollar price on the record of what the home market customer agreed to pay. They agreed to pay a U.S. dollar price. It gets converted in the Turkish home market to the Turkish Lira price, and it's not a fair comparison under the statute to convert to Turkish Lira and then convert back to a U.S. dollar price on the exchange rate of the U.S. sale, not the Turkish sale. Okay, I can see it's been a long morning, but thank you for your time. I thank all counsels. This case is taken under submission.